# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE S. MONTGOMERY,<br><br>    Plaintiff,<br><br> v.<br><br>I. SANCHEZ, et al.,<br><br>    Defendants.<br>             / | CASE NO. 1:11-cv-00961-GBC (PC)<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND COGNIZABLE<br><br>Doc. 1<br><br>RESPONSE DUE WITHIN THIRTY DAYS |

**Screening Order**

**I. Screening Requirement and Standard**

On June 14, 2011, Plaintiff Dwayne S. Montgomery ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. Doc. 1. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1  A complaint must contain "a short and plain statement of the claim showing that the pleader
2  is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but
3  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
4  do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,
5  550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I*
6  *v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009). While factual allegations are accepted
7  as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

8  While prisoners proceeding pro se in civil rights actions are still entitled to have their
9  pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is
10 now higher, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Under § 1983, plaintiff must
11 demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v.*
12 *Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations
13 sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*,
14 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this
15 plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

16 Section 1983 provides a cause of action for the violation of constitutional or other federal
17 rights by those acting under color of state law. *E.g.*, *Patel v. Kent School Dist.*, 648 F.3d 965, 971
18 (9th Cir. 2011); *Jones*, 297 F.3d at 934. For each defendant named, plaintiff must show a causal link
19 between the violation of his rights and an action or omission of the defendant. *Iqbal*, 556 U.S. at
20 678-79; *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554,
21 570 (9th Cir. 2009). There is no respondeat superior liability under § 1983, and each defendant may
22 only be held liable for misconduct directly attributed to him or her. *Iqbal*, 556 U.S. at 677-79; *Ewing*
23 *v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

24 **II. Plaintiff's Complaint**

25 In Plaintiff's complaint, he names defendants "Doe" Officer; I. Sanchez, Correctional
26 Officer; H.B. Smith, Correctional Officer; J. Pelayo, Correctional Officer; S.W. Duncan,
27 Correctional Sergeant, who were employed at Kern Valley State Prison ("KVSP"). Compl. at 1, 3,
28 6, Doc. 1.

On August 12, 2010, Plaintiff informed the third watch floor officer ("Officer Doe") that Plaintiff was not getting along with cellmate, inmate Ivan Frost; that living conditions had become precarious; and that Plaintiff need a cell move for safety concerns. *Id.* at 7. Officer Doe stated there was nothing he could because Facility D was undergoing a major transition, being converted from general population to sensitive needs yard, and that only the watch Sergeant and facility Lieutenant had control over making convenient cell moves. *Id.* Plaintiff requested to speak with the Sergeant, and later that evening Officer Doe informed Plaintiff that the Sergeant was unavailable. *Id.*

On August 13, 2010, Plaintiff informed defendant Officer Smith that he was continuously having arguments with Frost, and that Plaintiff was in fear of his safety because Frost had made several threats toward him. *Id.* Plaintiff informed Smith that he needed a cell move, but Smith told Plaintiff to just bear with it for a while because Plaintiff and Frost would soon be moving to Facility A or B. *Id.*

On August 14, 2010, at 9:30 a.m., Plaintiff and Frost got into a heated argument, and Plaintiff notified defendant Pelayo that he had an emergency and needed to speak with one of the unit floor officers. *Id.* at 7-8. Pelayo issued a distress call and defendant Officer Sanchez came to the cell door. *Id.* at 8, 14. Plaintiff informed Sanchez that he had just been threatened with physical harm by inmate Frost and was in fear of his personal safety. *Id.* at 8. Plaintiff asked Sanchez to separate him from inmate Frost by being removed from the cell and placed in the shower area until Sanchez could contact his supervisor (the yard Sergeant) to arrange a cell move. *Id.* Sanchez completely ignored Plaintiff's plea for protection and walked away from the cell door without making any kind of inquiry as to the level or severity of the threat. *Id.* Plaintiff continued yelling out of his cell door to Pelayo and Smith, who were both in the control booth, demanding that someone call the yard Sergeant, but they ignored him. *Id.* Approximately 40 to 50 minutes later, inmate Frost assaulted Plaintiff, and he was knocked unconscious. *Id.* When Plaintiff regained consciousness, he began banging on the cell door, yelling "Mandown!" *Id.* The inmate housed in the cell next door also yelled "Mandown!" *Id.*

Sanchez came to the cell alone and noticed Plaintiff was bleeding from his nose and had a laceration under his left eye. *Id.* Sanchez then ordered Plaintiff and inmate Frost to prone out on the

cell floor. *Id.* As they were both complying, Sanchez pepper sprayed Plaintiff through the food port on the cell door. *Id.* at 8-9. Sanchez did this without provocation or justification, and inmate in the neighboring cell and inmate Frost can testify to these facts. *Id.* at 9. Sanchez then activated his emergency alarm, and several officers responded, including Smith and defendant Sergeant Duncan. *Id.* Plaintiff was then handcuffed and escorted to the medical clinic to treat his injuries. *Id.*

As Plaintiff was being treated for his injuries, Duncan asked Plaintiff what happened, and Plaintiff explained the entire incident, that he had informed Sanchez of the threat prior to the altercation and that Sanchez pepper sprayed him without provocation. *Id.* Duncan acknowledged Sanchez had contacted him prior to the altercation and apprised him of the situation, but that he was preoccupied with other matters and had no time to deal with Plaintiff's issue. *Id.* As a result of the assault committed by inmate Frost, Plaintiff suffered a "busted" nose and deep laceration under his left eye that required several stitches. *Id.* Plaintiff was taken to a hospital outside the institution (Plaintiff believes it was Kern Valley Medical Center), and a CAT scan revealed a blown out orbit in his left eye. *Id.* Plaintiff had to endure several weeks of pain and discomfort because the pepper spray caused an infection to set in the laceration. *Id.* Plaintiff received minimal follow-up medical care after the incident, even after submitting multiple medical requests. *Id.* at 10.

On August 14, 2010, Sanchez issued Plaintiff a rules violation report ("RVR") for "fighting." *Id.* Sanchez fabricated the RVR, stating Plaintiff was engaged in combative behavior, which required use of the pepper spray. *Id.* As they were both complying, Sanchez pepper sprayed Plaintiff through the foot port on the cell door. *Id.* Smith and Pelayo also falsified their "Crime Incident Reports, stating they witnessed Plaintiff fighting with his cellmate, in order to cover-up the excessive force by Sanchez. *Id.* at 10-11, 16-17. On August 26, 2010, Lieutenant S. Henderson held a hearing for the RVR. *Id.* at 51-52. At the hearing, Sanchez stated that when he arrived at the cell door, it appeared that inmate Frost was the aggressor and Plaintiff appeared to be blocking the blows from Frost by swinging his arms. *Id.* at 51. Lt. Henderson found Plaintiff not guilty of the charge of fighting due to Sanchez's statement and the medical reports, which noted that Frost was not injured and Plaintiff received a cut and swelling on his left eye. *Id.* at 52.

On August 23, 2010, Plaintiff filed an inmate appeal staff complaint. *Id.* at 13. On September

1  13, 2010, Sanchez told Plaintiff that he had read Plaintiff's staff complaint, that it did not reach its
2  destination, and that Sanchez has friends and Plaintiff's complaint will get nowhere at KVSP. *Id.*
3  Plaintiff did not file any other grievance while at KVSP, for fear of reprisal or retaliation by the
4  individuals identified in the complaint. *Id.* On December 3, 2010, Plaintiff was transferred to
5  California State Prison Los Angeles County. *Id.* On January 22, 2011, Plaintiff submitted a second
6  staff complaint. *Id.* at 13, 57-58. On March 15, 2011, the KVSP Appeals Coordinator rejected and
7  cancelled Plaintiff's appeal due to time constraints. *Id.* at 13, 56. In the appeal rejection notice,
8  Plaintiff was notified that he could not appeal a rejected appeal, but he could file a separate appeal
9  on the cancellation decision. *Id.* at 56.[1]

10  Plaintiff alleges failure to protect and excessive force against Sanchez. *Id.* at 14-16. Plaintiff
11  alleges failure to protect against Smith and Duncan. *Id.* at 14-15. Sergeant Duncan had a duty to
12  instruct Sanchez and / or Smith to immediately separate Plaintiff from his cellmate. *Id.* at 15.
13  Plaintiff alleges defendants acted in "collusion" to cover-up the assaults against Plaintiff by inmate
14  Frost and Officer Sanchez. *Id.* at 17.

15  For relief, Plaintiff seeks compensatory damages in the amount of $250,000 and punitive
16  damages of $100,000. *Id.*

17  //
18  //
19  //

---

[1] It appears that Plaintiff may not have properly exhausted his claims prior to initiating this action. Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is therefore mandatory, and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The PLRA's exhaustion requirement requires "proper exhaustion" of administrative remedies. *Ngo*, 548 U.S. at 93. This means "[p]risoners must now exhaust all 'available' remedies," *id.* at 85, in "compliance with an agency's deadlines and other critical procedural rules," *id.* at 90–91. The requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* Although Plaintiff attempted to exhaust following his transfer to a different prison, it appears that he did not pursue his appeal following its cancellation, by filing a separate appeal, as instructed by the KVSP Appeals Coordinator. Compl. at 56, Doc. 1. Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by the defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Therefore, whether Plaintiff properly exhausted his claims is not currently before this Court.

### III. Legal Standard and Analysis for Plaintiff's Claims

### A. Eighth Amendment Failure to Protect

### 1. Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *E.g.*, *Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

Regarding the deliberate indifference prong of this analysis, a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* This requires examination of the subjective intent of the defendant; that the prison official defendant acted with a "sufficiently culpable state of mind" and deliberate indifference to an inmate's health or safety. *See Farmer*, 511 U.S. at 834. Neither negligence nor gross negligence will constitute deliberate indifference. *See id.* at 835-36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Allegations in a pro se complaint sufficient to raise an inference that the named prison officials acted with deliberate indifference—i.e, that they knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it—states a "failure-to-protect" claim. *Hearns*, 413 F.3d at 1041–42.

### 2. Analysis

Plaintiff's complaint demonstrates that Officers "Doe," Pelayo, and Sanchez took reasonable steps to protect Plaintiff by notifying a superior of Plaintiff's concerns. *See Farmer*, 511 U.S. at 833.

Officer "Doe" notified the on duty sergeant; Pelayo notified Sanchez; and Sanchez notified Sergeant Duncan. Thus, Officers "Doe," Pelayo, and Sanchez did not disregard a substantial risk but did in fact take *reasonable measures* within their power to notify a superior of Plaintiff's concerns. Therefore, Plaintiff fails to state a cognizable claim against Officers "Doe," Pelayo, and Sanchez based upon Eighth Amendment failure to protect.

As for Defendant Officer Smith, Plaintiff informed him that he was continuously having arguments with Frost, and that Plaintiff was in fear of his safety because Frost had made several threats toward him. Compl. at 7. Plaintiff informed Smith that he needed a cell move, but Smith told Plaintiff to just bear with it for a while because Plaintiff and Frost would soon be moving to Facility A or B. *Id.* Plaintiff does not allege whether or not Officer Smith notified anyone of Plaintiff's issues. Therefore, Plaintiff's allegations are sufficient to state a cognizable claim against Officer Smith based upon Eighth Amendment failure to protect.

As to Sergeant Duncan, he acknowledged that Sanchez had contacted him prior to the altercation and apprised him of the situation, but that he was preoccupied with other matters and had no time to deal with Plaintiff's issue. Compl. at 9. Therefore, these allegations are sufficient to state a cognizable claim against Sergeant Duncan based upon Eighth Amendment failure to protect.

### B. Personal Participation and Doe Defendants

Under Section 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934. The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* at 676. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. *Id.* Moreover, "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

//

**C. Eighth Amendment Excessive Force**

The Eighth Amendment protects prisoners from the use of excessive force. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . " *Hudson*, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7; *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Martinez*, 323 F.3d at 1184. In considering these factors, prison authorities "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321 (quoting *Bell*, 441 U.S. at 547).

Plaintiff alleges Sanchez came to the cell alone and noticed Plaintiff was bleeding from his nose and had a laceration under his left eye. Compl. at 8. Sanchez then ordered Plaintiff and his

cellmate to prone out on the cell floor. *Id.* As they were both complying, Sanchez pepper sprayed Plaintiff through the food port on the cell door without provocation or justification. *Id.* at 8-9. These allegations are sufficient to state a cognizable claim against Officer Sanchez based upon Eighth Amendment excessive force.

### D. False Reports

To the extent that Plaintiff attempts to allege a liberty interest regarding the submission of false reports against him, he fails to state a cognizable claim for relief. The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986). However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Plaintiff alleges that defendants filed a false report against him. However, Plaintiff's complaint demonstrates that Plaintiff received all of his necessary due process, including being found not guilty of the RVR. On August 26, 2010, Lieutenant S. Henderson held a hearing for the RVR. *Id.* at 51-52. At the hearing, Officer Sanchez stated that when he arrived at the cell door, it appeared that inmate Frost was the aggressor and Plaintiff appeared to be blocking the blows from Frost by swinging his arms. *Id.* at 51. Lt. Henderson found Plaintiff not guilty of the charge of fighting due to Sanchez's statement and the medical reports, which noted that Frost was not injured and Plaintiff received a cut and swelling on his left eye. *Id.* at 52.

Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon false reports.

### E. Eighth Amendment Deliberate Indifference to Serious Medical Need and Linkage

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'"

and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (citing *McGuckin* at 1060). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. *McGuckin* at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones*, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d at 1205-08; *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff may not seek to impose liability on defendants merely upon position of authority, based on vague or other conclusory allegations. Plaintiff fails to allege sufficient facts to support a plausible claim based on the knowing disregard of a substantial risk of harm to Plaintiff's health. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner, and *Estelle*, 429 U.S. at 106; *McGuckin*, 974 F.2d at 1059, and isolated occurrences of neglect do not rise to the level of an Eighth Amendment violation, *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff makes a vague reference to being denied follow-up treatment following the incident.

Compl. at 10. However, Plaintiff failed to link a named defendant to his allegations of deliberate indifference to medical need. Plaintiff failed to state that a named defendant actually knew and disregarded Plaintiff's serious medical need pursuant to *Iqbal*, 556 U.S. at 678-79; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21; *Ewing*, 588 F.3d at 1235; and *Jones*, 297 F.3d at 934.

Therefore, Plaintiff fails to state a cognizable claim against any defendants for Eighth Amendment deliberate indifference to a serious medical need.

### F. Conspiracy

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . " *Id.*

Plaintiff alleges defendants acted in "collusion" to cover-up the assaults against Plaintiff by inmate Frost and Officer Sanchez. Compl. at 17. This allegation is vague and conclusory, and there are no specific facts supporting the existence of a conspiracy. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). As such, a bare allegation that defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a

conspiracy claim under § 1983.

## IV. Conclusion and Order

Plaintiff states a cognizable claim for Eighth Amendment failure to protect against Officer Smith and Sergeant Duncan and Eighth Amendment excessive force against Officer Sanchez. Plaintiff does not state any other claims. The Court will provide Plaintiff with an opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff decides not to amend and is willing to proceed only on the claim found to be cognizable, Plaintiff shall notify the Court. The Court will issue an order dismissing all other claims from this action, and forward service documents to Plaintiff for completion and return as to the remaining defendants.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . ." *Twombly*, 550 U.S. at 555.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (reference to original and first amended complaints was precluded by doctrine that an amended pleading supersedes the original pleading). Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474.

//
//
//

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (a) file a first amended complaint curing the deficiencies identified herein; or

    (b) notify the Court of willingness to proceed only on claims found to be cognizable as stated herein;

3. Plaintiff may not add any new, unrelated claims to this action via the first amended complaint and any attempt to do so may result in an order striking the first amended complaint; and

4. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order.

IT IS SO ORDERED.

Dated:   August 23, 2012

_____
UNITED STATES MAGISTRATE JUDGE